IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 16–cv–02602–KMT

JERROD SHOALS,

    Plaintiff,

v.

CHP (CLINICAL HEALTH PARTNERS),
P. A. SINGH, and
DR. CREANY,

    Defendants.

---

# ORDER

---

This matter is before the court on the "Motion to Dismiss from Defendant Timothy Creany." (Doc. No. 30.) Plaintiff filed a Response (Doc. No. 49), to which Defendant Creany replied. (Doc. No. 55.) Also before the court is the "Motion to Dismiss from Defendant Correctional Health Partners." (Doc. No. 46.) Plaintiff filed a Response (Doc. No. 69), to which Defendant Correctional Health Partners ("CHP") replied. (Doc. No. 71.) Finally before the court is the "Motion by Defendant P.A. Singh to Dismiss the Complaint for Failure to State a Claim." (Doc. No. 61.) Although provided with additional time to do so (Doc. No. 72), Plaintiff did not respond to the same.

## BACKGROUND INFORMATION

Plaintiff, a former inmate proceeding *pro se*, initiated this action on October 18, 2016. (Doc. No. 1 ["Comp."].)[1] In his Complaint, Plaintiff alleges that he did not receive adequate medical care while incarcerated. (*See generally* Comp.) He explains that prior to his incarceration he sustained an on the job injury to his left foot on July 10, 2015 when a nail punctured his "first metatarsal head." (*Id.* at 3, 4.) Plaintiff was treated by Dr. Natasha Deonarain who placed Plaintiff in a surgical boot. (*Id.* at 4.) Records from Dr. Deonarain note that she examined him on August 13, 2015. (Resp. at 7.) She noted Plaintiff's report that, as a result of a previous puncture wound in his foot, he was continuing to experience pain and paresthesia if he stood for longer than 5-10 minutes and that a previous MRI was negative for nerve damage. (*Id.* at 7-8.) Upon examination, Dr. Deonarain noted Plaintiff exhibited a normal gait and that a puncture wound was visible over the first metatarsal heal on left foot and that it was tender to direct palpation. (*Id.* at 9.) She referred Plaintiff to a podiatrist. (*Id.* at 7.) She also recommended over the counter medications and limiting himself to light duty. (*Id.*)

Dr. Michael Zyzda, podiatrist, saw Plaintiff on September 2, 2015 and stated in his records, "We will get him approved for some orthotics to see if we can distribute the weight and pad that area more" and noted Plaintiff would need to get casting done for the same. (*Id.* at 10.) Dr. Zyzda also noted Plaintiff might benefit from topical cream four times per day. (*Id.*) In late September or October 2015, before the orthotics could be completed, Plaintiff was incarcerated at Bent County Correctional Facility ("BCCF"). (Comp. at 4; Doc. No. 42 at 1.)

---

[1] While this lawsuit was pending, Plaintiff was released from incarceration. (Doc. No. 65.)

Upon arriving at BCCF, Plaintiff requested medical attention related to his left foot. (Comp. at 4.) According to Plaintiff's medical records from BCCF, he was seen by Jamie Harrelson on September 30, 2015. (Doc. No. 42 at 1.) Plaintiff reported that due to the previous foot injury, his toe goes numb and hurts if he stands on it or wears tight shoes. (*Id.*) Upon examination, Harrelson noted Plaintiff had a normal gait, normal strength in the subject toe, and subjective complaints of pain. (*Id.*) Harrelson recommended Plaintiff be fitted for wide boots and recommended he discontinue wearing the surgical boot. (*Id.*)

Plaintiff was next seen on October 20, 2015 by Jeremy Romero, a Registered Nurse. (*Id.* at 2.) Plaintiff reported that he experienced foot pain and numbness when standing for longer than ten minutes and when crossing over his leg. (*Id.*) He also stated the symptoms last for about five to eight minutes. (*Id.*) Plaintiff reported that prior to his incarceration, his physicians had performed an x-ray, prescribed pain medication, and were in the process of completing a mold of his foot in order "to make a shoe for him." (*Id.*) Nurse Romero referred Plaintiff to a physician and requested his medical records from Concentra. (*Id.*)

Plaintiff saw Defendant Dr. Timothy Creany on December 9, 2015. (Comp. at 4; Doc. No. 42 at 3.) Plaintiff reported that he was experiencing pain in his left foot from an injury suffered in July 2015 and that he used to be on Percocet. (*Id.*) Dr. Creany noted Plaintiff was in an "ortho shoe" and had a normal gait. (*Id.*) Dr. Creany ordered "labs to ensure no ongoing infxn but doubt." (*Id.*) He informed Plaintiff that he could prescribe pain medication that would help to some extent. (*Id.*) Dr. Creany noted, "[D]oubt he will be approved to get an orthotic, but awaiting his old records. I suspect he will cont to ask about this and not accept the answers he gets." (*Id.*)

Plaintiff alleges Dr. Creany informed him that he could not provide orthopedic shoes because the Department of Corrections ("DOC") would not allow it. (Comp. at 4.) Plaintiff states that Dr. Creany first prescribed Lamictal for pain and when Plaintiff reacted badly, he prescribed Pamilair instead. (*Id.*; Doc. No. 42 at 3.) According to Plaintiff, Dr. Creany recommended an x-ray of Plaintiff's foot but Plaintiff refused because the primary problem with his foot was nerve damage, which an x-ray would not detect. (Comp. at 4.) Dr. Creany also told Plaintiff to order shoes from the DOC canteen. (*Id.*) Plaintiff did so but found the shoes were too narrow, causing problems with neuropathy in his foot, and he continued instead to use his medical boot. (*Id.* at 4, 5.)

In May 2016, Plaintiff was transferred to the Arkansas Valley Correctional Facility ("AVCF"). (*Id.* at 4.) Similar to his arrival at BCCF, Plaintiff immediately requested medical attention regarding his left foot injury. (*Id.*) Plaintiff was examined by Defendant Tejinder Singh, a Physician's Assistant. (*Id.*) Plaintiff alleges Defendant Singh accused him of lying, spit in his face, and told Plaintiff that he would not issue medical shoes and that Plaintiff had to wear regular shoes like everyone else. (*Id.* at 4-5.)

Plaintiff alleges officials of CHP were aware of his medical conditions and his lack of treatment. (*Id.* at 5.) He contends he suffers constant pain and discomfort similar if not worse than when the injury first occurred. (*Id.*) Construing Plaintiff's Complaint liberally, he is asserting claims under 42 U.S.C. § 1983 based on violations of his right to adequate medical care under the Eighth Amendment. (*See generally* Comp.) Each Defendant has filed a Motion to Dismiss contending Plaintiff has failed to state a claim upon which relief can be granted.

**LEGAL STANDARD**

**1.** *Pro Se* **Plaintiff**

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers").

However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (noting that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (noting the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**2.** *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotations omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Bellmon*, 935 F.2d at 1109. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679-81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 679 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678.

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (internal quotations omitted).

## ANALYSIS

### 1. Eighth Amendment

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (quoting *Gregg*, 428 U.S. at 173). The court's analysis of Plaintiff's Eighth Amendment claims involves both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). To prove a claim of deliberate indifference, a prisoner must establish that (1) he was deprived of a medical

7

need that is, objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety." *Id.* at 837. "A medical need is [sufficiently] serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (internal quotations omitted).

### a. Objective Component

As to the objective component, the court considers whether Plaintiff has been deprived of a sufficiently serious basic human need. "[A] medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

In *Martinez v. Rittenhouse*, No. 07-cv-02087, 2008 WL 2952361 (D. Colo. July 29, 2008), an inmate plaintiff asserted an Eighth Amendment deliberate indifference claim against a nurse practitioner based on her refusal to grant his request for a bottom bunk based upon grinding in his arthritic knees. *Id.* at *1. The court held the plaintiff had failed to set forth sufficient factual allegations to support the objective component of an Eighth Amendment claim. *Id.* at *2.

> Martinez was not diagnosed by a medical doctor that he had an arthritic knee and was in need of treatment. He also has not established that his medical condition was so serious that a lay person would recognize his need for treatment. Moreover, Martinez was observed by Rittenhouse walking without a limp at a steady gait. I find that this evidence shows Martinez's injury was not so apparent

that a lay person would have been able to observe that he was in need of medical attention.

*Id.*

The court finds Plaintiff similarly has not set forth sufficient factual allegations to support the objective component of his claim. Though he suffered a puncture to his toe when he stepped on a nail in July 2015, he does not allege he was diagnosed with a resulting medical condition. Additionally, he has not established his problems were so serious that a lay person would recognize his need for treatment. In each of his medical records, including records submitted by Plaintiff from his private physicians, he is repeatedly observed as exhibiting a normal gait and one record indicates he had normal strength in the affected toe. (Doc. No. 43-1 at 9; Doc. No. 42 at 1, 2, 3.) Additionally, Plaintiff refused the x-ray Dr. Creany intended to order on his foot. (Comp. at 4.) Plaintiff's allegations do not establish that his alleged medical problems were so apparent that a lay person would have been able to observe that he was in need of medical attention.

### b. Subjective Component

Although failing to allege the objective component of his Eighth Amendment claim is fatal, even if Plaintiff had done so, his allegations still would warrant dismissal as to Defendant Creany.[2] A defendant knew of and disregarded an excessive risk to a prisoner's health or safety when he was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and he actually drew that inference. *Farmer*, 511 U.S. at 837.

---

[2] Plaintiff's allegations regarding Defendant Singh are relatively vague with regard to medical care provided and therefore, the court will not address the subjective component of Plaintiff's claim with regard to Defendant Singh.

Importantly, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." *Whitley v. Albers*, 475 U .S. 312, 319 (1986). Thus, "a complaint that a [medical care provider] has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106. Further, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation."). Finally, a prisoner does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). "[A] prison doctor remains free to exercise his or her independent professional judgment," *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997), and "[m]edical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (quoting *Estelle,* 429 U.S. at 107).

There is no question Dr. Creany provided medical care to Plaintiff, including prescribing pain medication and recommending an x-ray, which Plaintiff declined. (Comp. at 4.) Plaintiff alleged Dr. Creany's medical treatment was inadequate because he did not provide "orthopedics that he knew were medically necessary to treat the injury." (*Id.*) Plaintiff presupposes Dr. Creany's knowledge of medical necessity based solely on Dr. Deonarain and Dr. Zyzda's alleged conclusions and recommendations. (*Id.*)

10

The law is well established that a "mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." *Ramos*, 639 F.2d at 575; *Callahan*, 471 F.3d at 1160 (explaining that a prisoner does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired); *see also Burns v. Laurance*, No. 10-cv-2691-WJM-CBS, 2015 WL 507658, at *11 (D. Colo. Feb. 3, 2015) (holding that difference of opinion between prisoner and his treating physicians about the offered alternatives and the preferred course of medical treatment does not constitute an Eighth Amendment violation); *White v. Goff*, No. 07–3311–SAC, 2011 WL 624059, at *2 (D. Kan. Feb. 11, 2011) (holding that while the plaintiff sometimes did not receive the specific type of medication he sought and was often dissatisfied with the medical attention provided and noncompliant with the medical advice he received, his disagreement with the care offered does not establish that he was denied constitutionally adequate medical care); *Martinez v. Boyd*, No. 08–cv–2181–PAB–MEH, 2009 WL 2766771, at *6 (D. Colo. Aug. 27, 2009) (holding claims of deliberate indifference based on prison medical personnel not granting prisoner's request for an alternative type of TB test and not providing him his preferred choice of medication did not provide adequate basis for establishing an Eighth Amendment violation)).

In his Response, Plaintiff relies upon *Johnson v. Wright*, 412 F.3d 398 (2nd Cir. 2005) to argue his Eighth Amendment claim should not be dismissed. (Doc. No. 43-1 at 2-3.) In *Johnson*, the plaintiff alleged that prison officials, as opposed to a physician, violated his Eighth Amendment rights by failing to follow the medical treatment prescribed by his treating physicians, including prison physicians. *Id.* at 400. The Circuit Court upheld the district court's

conclusion that the plaintiff had provided sufficient factual allegations to assert a deliberate indifference claim because a jury could reasonably infer the prison officials' refusal to follow the recommendation of "every single one of plaintiff's treating physicians, including prison physicians" was evidence of deliberate indifference, especially where the defendants had not taken any steps to investigate or verify whether ignoring the recommendations was medically appropriate. *Id.* at 404.

*Johnson* does not provide support for Plaintiff's claim as his claim does not arise from a prison official's refusal to follow medically prescribed treatment. Instead, Plaintiff's claim is premised upon the fact that Dr. Creany's treatment allegedly differed from that of previous physicians. As Defendant Creany notes in his Reply, the lower court decision in *Johnson* specifically recognized if the plaintiff's claim had been based upon "a mere disagreement between physicians, such allegations would likely not state a claim of deliberate indifference." *Johnson v. Wright*, 234 F. Supp. 2d 352, 362 (S.D.N.Y. 2002).

Similarly, Plaintiff cites to various cases in which the courts found that although the plaintiff had been provided some medical care while incarcerated, the care did not actually treat the complained of condition and/or amounted to little more than documenting the plaintiff's worsening condition. *See Greeno v. Daley*, 414 F.3d 645, 654-55 (7th Cir. 2005) (reversing district court's granting of summary judgment on deliberate indifference claim where medical officials persisted in same course of treatment for several years that was ineffective); *Sulton v. Wright*, 265 F. Supp. 2d 292, 300 (S.D.N.Y. 2003) (recognizing that even if an inmate receives extensive medical care, a deliberate indifference claim may still be stated if the care ignores "the gravamen of his problem"), *abrogation on other grounds recognized in Scott v. Gardner*, 287 F.

Supp. 2d 477, 484 (S.D.N.Y. 2003). These cases are distinguishable from the present case as, based on Plaintiff's own allegations, Dr. Creany did not refuse to treat Plaintiff's primary problem, nor insist on pursuing an ineffective treatment over a long period of time.[3] Instead, Dr. Creany evaluated Plaintiff's condition, prescribed pain medication, prescribed alternative pain medication following Plaintiff's negative reaction to the former, and wanted to obtain an x-ray of Plaintiff's foot but Plaintiff refused.

"To show deliberate indifference to his serious medical needs the plaintiff must demonstrate that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Baker v. Wilkinson*, No. CIV–13–140–JHP–SPS, 2014 WL 298140, at *5 (E.D. Okla. Jan. 28, 2014) (internal quotations omitted). While not determinative, medical records evidencing examinations, diagnoses, and medications can rebut an inmate's allegations of deliberate indifference. *Id.* Plaintiff does not allege Dr. Creany refused to treat him. Rather, he alleges Dr. Creany refused to treat him in the manner he preferred. Such allegations are not sufficient to support an Eighth Amendment claim.

**2. CHP**

In addition to Plaintiff's failure to sufficiently allege an Eighth Amendment claim, Plaintiff's allegations against CHP are vague and warrant dismissal. In identifying CHP as a Defendant, he states that CHP "contracts with the Colorado Department of Corrections to deliver medical health care to inmates." (Comp. at 2.) With regard to factual allegations supporting his

---

[3] The court notes Plaintiff was only incarcerated at BVCF for approximately seven months. (Comp. at 4.)

claim, Plaintiff states only that, based upon a letter he sent to an attorney, "representatives for CHP [] are aware of the medical condition and its afflictions." (*Id.* at 5.)

In its Motion to Dismiss, CHP notes Plaintiff never alleges the individual Defendants are employed by CHP and CHP denies the same. (Doc. No. 46 at 5.) In his Response, Plaintiff concedes neither Defendant is employed by CHP, but states that they are "gatekeepers" between inmates and CHP because when inmates require special medical treatment, such as medical shoes, physicians contact CHP "who then relays this medical need to CDOC, approving the treatment." (Doc. No. 69 at 2.)

As an initial matter, the court notes that the purpose of a motion to dismiss is "to assess whether the plaintiff's *complaint* alone is legally sufficient to state a claim for which relief may be granted.'" *Stinson ex rel. United States v. Maynard,* 341 F. App'x 413, 417 (10th Cir. 2009) (emphasis in original) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006)). Thus, the court generally will not consider new factual allegations included in a plaintiff's response to a motion to dismiss. *Id.* However, even considering Plaintiff's additional allegations, his claim still fails.

Plaintiff does not specifically allege anyone employed by CHP was involved in making decisions about Plaintiff's treatment and/or what medical treatment he would receive. Construing Plaintiff's additional allegations exceedingly liberally, if CHP had to approve certain medical treatment, Plaintiff does not allege Defendants ever made such requests to CHP and/or that such requests were denied. To survive a motion to dismiss, Plaintiff must plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff has not met that burden with regard to CHP.

Accordingly, it is

**ORDERED** that the "Motion to Dismiss from Defendant Timothy Creany" (Doc. No. 30), the "Motion to Dismiss from Defendant Correctional Health Partners" (Doc. No. 46.), and the "Motion by Defendant P.A. Singh to Dismiss the Complaint for Failure to State a Claim" (Doc. No. 61) are **GRANTED** and this matter should be dismissed in its entirety.

Dated this 24th day of January, 2018.

BY THE COURT:

*[signature]*

Kathleen M. Tafoya
United States Magistrate Judge